CASE NO. 14-2330

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

**UNITED STATES,**

**Appellee**

**v.**

**OSCAR RODRIGUEZ CRUZ,**

**Appellant/Defendant**

---

On Appeal From A Judgment Of Conviction
In The United States District Court
District Of Massachusetts

---

**ANDERS BRIEF**
**OF THE DEFENDANT/APPELLANT**

---

Katherine C. Essington
Appeals Court Bar No. 1149557
Attorney for Defendant/Appellant
190 Broad St., 3W
Providence, RI 02903
(401) 351-2889
katyessington@me.com

## TABLE OF CONTENTS

Table of Contents .............................................. i

Table of Authorities ......................................... ii

Statement of Jurisdiction ..................................... 1

Statement of Issue Presented for Review ....................... 1

Statement of the Case ......................................... 1

Statement of the Facts ........................................ 2

Applicable Law and Standard of Review ......................... 3

Summary of the Argument ....................................... 3

Argument ...................................................... 4

      I.  Voluntariness Of The Plea ............................ 4

          A. The Defendant's Pleas Was Knowing and Intelligent. 4

          B. At The Time Of The Plea, The Defendant Understood
             That The Government's Plea Bargain Offer Had
             Expired And/Or Been Withdrawn .................... 7

      II. Issues Related To Sentence Imposed .................. 12

          A. The Court Gave The Defendant A Downward Departure 12

          B. The Sentence Was Not Substantively Unreasonable .. 13

Conclusion ................................................... 17

Certificate of Compliance .................................... 17

Table of Contents to Addendum ................................ 18

Addendum ............................................... Add 1-6

## <u>Table of Authorities</u>

**Statutes**

18 U.S.C. §3231 ............................................... 1

18 U.S.C. §3553 ...............................................

21 U.S.C. §841 ................................................ 1

21 U.S.C. §846 ................................................ 1

28 U.S.C. §1291 ............................................... 1

**Cases**

<u>Anders v. California</u>, 386 U.S. 738 (1967) ............... 1, 3, 17

<u>Gall v. United States</u>, 552 U.S. 38 (2007) ..................... 13

<u>Penson v. Ohio</u>, 488 U.S. 75 (1988) ............................ 3

<u>Rita v. United States</u>, 551 U.S. 338 (2007) .................... 14

<u>Tollet v. Henderson</u>, 411 U.S. 258 (1973)...................... 11

<u>United States v. Bradstreet</u>, 207 F.3d 76 (1st Cir. 2000) ...... 10

<u>United States v. Booker</u>, 543 U.S. 220 (2005) .................. 14

<u>United States v. Dávila-González</u>, 595 F.3d 42 (1st Cir. 2010) . 13

<u>United States v. Cirilo-Munoz</u>, 504 F.3d 106 (1st Cir. 2007) ... 14

<u>United States v. Gray</u>, 63 F.3d 57 (1st Cir. 1995) .............. 4

<u>United States v. Martin</u>, 520 F.3d 87 (1st Cir. 2008) .......... 14

<u>United States v. Parra-Ibanez</u>, 936 F.2d 588 (1st Cir. 1991) .... 4

<u>United States v. Rivera-Moreno</u>, 613 F.3d 1 (1st Cir.), <u>cert</u>.
    <u>denied</u>, 562 U.S. 1035 (2010) ............................ 13

<u>United States v. Tavares</u>, 705 F.3d 4 (1st Cir), <u>cert</u>. <u>denied</u>, __
    U.S. __, 134 S.Ct. 450 (2013) ............................ 15

## Statement of Jurisdiction

The district court in Massachusetts had jurisdiction pursuant to 18 U.S.C. §3231 which grants the district courts original jurisdiction over all offenses against the laws of the United States. This Court has jurisdiction on appeal pursuant to 28 U.S.C. §1291 (giving the circuit courts appellate jurisdiction over all final decisions of the district court).

## Statement of The Issue Presented For Review

Should trial counsel be allowed to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967) and Local Rule 46.6(c)?

## Statement of the Case

The defendant, Oscar Rodriguez Cruz, along with twelve co-defendants, was indicted on one count of conspiracy to distribute five kilograms or more of cocaine pursuant to 21 U.S.C §846 and §841(b)(1)(A)(ii)(Docket 56[1]). He was

---

[1] Hereinafter "D" followed by the Docket number and then the page number, if any.

extradited to the United States From the Dominican Republic where he owned substantial property.[2]

On June 17, 2014, Mr. Rodriguez Cruz, represented by Attorney Geoffrey Nathan, pleaded guilty to Count I of the superseding Indictment. (See D570). There was no plea agreement.

On December 9, 2014, Judge O'Toole sentenced Mr. Rodriguez Cruz to a term of imprisonment of 210 months with 3 years of supervised release. (See D598). Mr. Rodriguez-Cruz filed a timely Notice of Appeal on December 15, 2014. (D604).

## Statement of Facts

At the plea hearing, the prosecutor offered the following version of facts:

> [T]he defendant was importing large quantities of cocaine from the Dominican Republic into the United States as well as to New York and Puerto Rico and giving that cocaine to several individuals, including Manuel Pinales, one witness in this case, as well as Santurnia Cruz-Pena, also known as Tony Cruz or Chulo.
> That cocaine was smuggled into the United States, into New York, into the Boston area. In particular, would indicate-- the evidence would show that between August of 2004 and October of 2004, the defendant arranged, through coded conversations, to deliver what was referred to as "80 women," 80 kilograms of cocaine, that was first going to be given to a person by the name of Yayo (ph), Don Arias, but then was

---

[2]  More than 30 properties are listed in the government's Motion For Preliminary Oder of Forfeiture (Specific Assets) (D 566).

> given to Manuel Pinales.  And then later that cocaine
> was seized in the city of Boston in October of 2004,
> in which a total of 58 kilograms of cocaine were
> seized that were sent from the Dominican Republic  to
> Manuel Pinales by the defendant for distribution here
> in Massachusetts. (D570 17).

Mr. Rodriguez Cruz agreed that this summary of the evidence

was essentially accurate. (D570 18).

## Applicable Law and Standard of Review

Pursuant to Anders v. California, 386 U.S. at 744,

upon concluding that an appeal is wholly without merit,

counsel must nonetheless conscientiously examine the record

and file a brief pointing to anything that conceivably

could support the appeal. See also Penson v. Ohio, 488 U.S.

75 (1988).  Once an appellate court receives an Anders

brief, it must then conduct a full examination of the

record and make its own determination as to whether the

case is wholly frivolous. Id. at 80.

## Summary of the Argument

Counsel should be permitted to withdraw pursuant to

Anders, supra, because there are no nonfrivolous issues to

pursue in the appeal. Mr. Rodriguez Cruz's plea appears to

have been knowing and voluntary, and he understood at the

time of the plea that the government had withdrawn its

earlier plea offer that included a sentencing

recommendation of 10 to 12 years. In addition, the sentence

3

was not unreasonable where the judge found that a sentence below the Guidelines was appropriate, and sentenced the defendant to a term that was less than the statutory maximum.

## Argument

### I.    VOLUNTARINESS OF THE PLEA

#### A.    The Defendant's Plea Appears To Have Been Knowing and Intelligent.

Pursuant to Rule 11, a defendant's guilty plea must be "knowing, voluntary and intelligent." Rule 11 embodies three "core concerns," "1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea." United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995). "[A] Rule 11 challenge will not be deemed waived upon a party's failure to raise it in the district court." United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991).

At the time of his guilty plea, Mr. Rodriguez Cruz was forty-eight years old and had completed three years of high school. (D570 4). He is a citizen of the Dominican Republic and used an interpreter during the plea hearing. (D570 2,4). He stated that he was taking medicine for high blood pressure, and had taken medication for depression in the

past. (D570 5). He stated that he was seeing a psychiatrist regularly before his incarceration and has seen a psychiatrist while in prison, mostly when he requested it. (D570 6-7). He stated that he felt good at the time of the hearing, and had only taken the blood pressure medication. (D570 7).

Mr. Rodriguez Cruz stated that the Indictment had been translated into Spanish for him and that he understood it. (D570 7-8). The prosecutor clarified that the defendant was not admitting to being responsible for any particular weight of cocaine during the plea, and was not admitting that the conspiracy was responsible for any particular weight. (D570 8-9).

The prosecutor then summarized the range of penalties, including a maximum term of twenty years incarceration, and the forfeiture of property in the Dominican Republic. (D570 9-10). Mr. Rodriguez Cruz stated that he understood the possible penalties. (D570 9-11).

The judge advised Mr. Rodriguez Cruz of the rights he was giving up in entering a guilty plea, including his right to have a jury trial, to call and cross examine witnesses, and to not incriminate himself. (D570 11-12). He told Mr. Rodriguez Cruz that, following the presentation of evidence, the jury would be instructed that they must

5

acquit him unless they found that the government had proved

its case beyond a reasonable doubt. (D570 12). The judge

asked Mr. Rodriguez if he understood that by pleading

guilty, he was giving up all of those rights. (D570 13).

He responded affirmatively. (D570 13).

> The following exchange thereafter took place:
>
> THE COURT: Have you made your decision to give up your
> right to a jury trial and to give up your right
> against self-incrimination after a full opportunity to
> talk with your lawyer and to have the benefit of his
> advice?
>
> MR. CRUZ: Yes, I'm very clear.
>
> THE COURT: Yes. What I want -- precisely what I was
> asking is have you had a -- before you made those
> decisions to waive those rights that we've talked
> about, did you have a full opportunity to talk with
> your lawyer about that decision that you were making?
>
> MR. CRUZ: Yes, sir.
>
> THE COURT: And are you satisfied that, in advising you
> in this respect, Mr. Nathan has been acting in your
> best interest?
>
> MR. CRUZ: Yes, sir.   (D570 13).

> The judge advised Mr. Rodriguez Cruz that a

Presentence Report would be prepared at a later date, and

that the report would suggest an application of the

Sentencing Guidelines to his case. (D570 14). Mr. Rodriguez

Cruz answered affirmatively when asked if he had discussed

the Guidelines with his attorney and how they might apply

in his case. (D570 14). The judge advised Mr. Rodriguez

Cruz that he was not bound by those Guidelines, and that the sentence imposed could be outside the Guidelines range. (D570 14-15).

Mr. Rodriguez Cruz denied that anyone was forcing or pressuring him to plead guilty, that he was relying on any promises in exchange for his guilty plea, and answered yes when asked if pleading guilty was his personal decision. (D570 16).

Undersigned counsel has thoroughly examined the issue of the voluntariness of Mr. Rodriguez Cruz's plea, and concluded that there is nothing in the record to suggest that his plea was not knowing or intelligent or otherwise involuntary.

**B.    At The Time Of The Plea, The Defendant Understood That The Government's Earlier Plea Bargain Offer Had Expired And/Or Been Withdrawn.**

At a status conference on March 20, 2014, it was revealed that the government had made a plea bargain offer. In exchange for the government's recommendation of a 10 to 12 year sentence for Mr. Rodriguez Cruz, he agreed to forfeit numerous properties in the Dominican Republic.

Defense counsel, who, at that time was James Budreau[3],

stated:

> My brother and I have been going back and forth
> in terms of trying to put together a plea
> agreement for Mr. Cruz. Because it involves some properties,
> that also has made it very complicated.
> And there have been some major changes in that
> plea agreement as of just today that I was unaware of
> which changed the whole face of the agreement. So I
> obviously need time to review that with my client, and
> as well as with his family because it does affect his
> family down in the Dominican Republic. (D552 3).

The prosecutor stated:

> Your Honor, just so the Court is aware, we have an
> agreement that's been signed and offered dated March
> 20th. And basically, the issue is -- is not so much
> the prison time, which is obviously an important part,
> but it's the properties. There's about three --
> perhaps more than $3 million worth of properties that
> are controlled or owned in in [sic] some manner by Mr.
> Oscar Cruz, and we're trying to resolve that.
> And the problem is that any agreement that
> involves giving back Mr. Rodriguez anything more than
> a million dollars requires the permission of the
> deputy assistant attorney general. And the agreement,
> as I was stating before, may have crossed that
> threshold. That's the reason why the last minute
> change. (D552 4)

At the status conference on April 3, 2014, there was

further discussion about the plea bargain offer previously

by the government. (See D555). The prosecutor stated:

> Well, so I just want to be entirely transparent here
> about what's going on. There was a plea agreement

---

[3] Mr. Budreau subsequently withdrew from the case citing a
break down of the attorney-client relationship.  At that
point, Mr. Nathan, who had also entered an appearance in
the case, became lead counsel. (See D555).

offered dated March 20th to Mr. Rodriguez Cruz. The
deadline was set for today. That offer, if not
accepted today, is going to be withdrawn. I think
there's still a possibility that Mr. Rodriguez Cruz
may plead guilty without an agreement to the
indictment as it stands which I explained last time
the indictment as it stands is a pre-arraignment
indictment, so if he did plead guilty, he would not be
facing a mandatory minimum, and he would be facing a
statutory maximum of 20 years, although the guidelines
of this case are pretty much very close to 20 years,
even with the amendment of 2D1.1. (D555 5-6).

Defense counsel stated:

Now, there was an agreement on the table that looked
great to me. That's the March 18th one. In the upper
left-hand corner it said, you know, "Draft." Now, I
think my client had wanted that agreement. He thought
that was his deal. You have to sort of have an
understanding of -- you know, look very closely to
understand the draft and understand what exactly a
draft agreement means.
    I would have understood -- I went to college and
law school -- it means "proposed"; it's not finalized
yet. The day he was ready to do it the last time we
were before you it didn't happen because it's just a
draft. I understand that. But I need more time to
explain that to my client . . . . But absent any
other considerations, he signed his deal. And it was -
- last time we were in, all of a sudden the government
said, Well, we got all the information we need. We got
the list of all your properties in the proffer
session, so since we got all the information from you,
we'll cancel that deal even though you signed it.

                    *    *    *    *

And the deal was that he sell all of his properties
that he had listed to the government, and he was going
to get a percentage back so after he did his ten to
12, he could provide for his mother and he could
provide for his wife. What more of an amicable result
could one expect out of a case like this, that the
U.S. Attorney's Office did everything that it could to
resolve this case.
    My understanding is someone else cancelled this
deal. But that's what he expected that he was going to

9

get. Why would he want to sign another deal only to have the government cancel yet another deal. Who knows? (D555 7-9).

Based on the foregoing, Mr. Rodriguez Cruz might have had an argument that the government breached an earlier plea agreement that he signed when it changed the forfeiture provisions concerning his properties in the Dominican Republic.[4] He did not make this argument in the district court prior to his plea,[5] however, nor did he seek

---

[4]At sentencing, the district judge found, sua sponte, that there was no prior agreement that was binding on the government. (D607 20).

[5] During the sentencing hearing, counsel for Mr. Rodriguez Cruz stated about the earlier agreement:

"There's a signed signature from James Herbert and emails from the prosecutor about it. And as far as I was concerned, you know, even and as far as Mr. Budreau was concerned, we had ourselves a done deal." (D607 11).

He also stated, "if it was approximately 10 to 12 at the time, that's what was agreed to at the sentencing." (D607 12).

Finally, he stated:

"And, okay, maybe it was a draft deal, but I didn't even know it was a draft deal; I thought it was a deal. Because to me with these guys a deal is a deal, and when it's signed, it's signed. You can't say, "Well, it really wasn't" -- "it was signed but we can't do it so we're just going to ask for a 20 instead." (D607 15).

specific performance in the trial court of the earlier deal. See <u>United States v. Bradstreet</u>, 207 F.3d 76, 80 (1st Cir. 2000)("It is well settled that when the government breaches a plea agreement, the defendant either can seek specific performance or can withdraw from the agreement"). Instead, his attorney (Nathan) acknowledged that the earlier agreement had been a "draft" rather than a final agreement.

More importantly, at the plea hearing on June 17, 2014, Mr. Rodriguez Cruz acknowledged that he was pleading guilty without an agreement of any kind, and without any promises from the government concerning its sentencing recommendations. Counsel for Mr. Rodriguez Cruz, in response to the judge's inquiry concerning whether there was a plea agreement stated:

> *Without a plea agreement at this time*. This morning I talked to Mr. Gallagher about the possibility of putting something before you by the time sentencing comes around. So we're working on it. I'd like to get something in writing. (D570 2) (Emphasis added).

Later, in the plea hearing, the following exchanges took place:

> THE COURT: So as you plead guilty, you do it without any form understanding about what you're actually going to be sentenced to.
>
> MR. CRUZ: Yes, sir.  (D570 15).

                    *       *       *       *

                              11

THE COURT: Now, in deciding to plead guilty, are you
relying on any assurances or promises that the
government has made to you that it will do something
or not do something?

MR. CRUZ: No, sir. (D570 16).

A voluntary guilty plea constitutes a break in the
chain of events and operates as a waiver of any defects in
the proceedings that came before it.  Tollet v. Henderson,
411 U.S. 258 (1973). Thus, Mr. Rodriguez Cruz's voluntary
guilty plea on June 17, 2014, without a plea agreement of
any kind, defeats any argument on appeal concerning a
possible breach of the earlier plea bargain by the
government. In addition, there is no indication in the
record that the district court judge would have followed
the government's recommendation of 10 to 12 years had the
Plea Agreement been enforced.

## II.   ISSUES RELATED TO THE SENTENCE IMPOSED

### A.   The Court Sentenced The Defendant Below The Applicable Guidelines Range And To Less Than The Maximum Term.

The Guidelines range for Mr. Rodriguez Cruz was 360
months to life, however there was an applicable statutory
cap of 240 months. (D607 7-9). The government recommended
240 months based on Mr. Rodriguez Cruz's status as a leader
in a drug conspiracy who was able to move thousands of
kilograms of cocaine and amass millions of dollars of

wealth. (D607 10). Defense counsel asked for 144 months, based on the government's earlier recommendation and the age of Mr. Rodriguez Cruz's previous convictions. (D607 13-16). The judge found that a term outside the Guidelines range was appropriate because the Guidelines range was "greater than is necessary to satisfy the various statutory goals of sentencing," and sentenced him to 210 months with 3 years of supervised release. (D607 19). The court ordered forfeiture of 10.5 million in cash as well as the forfeiture of a substantial amount of real property. (D607 20-1).

### B.    The Sentence Was Not Procedurally Unsound Or Substantively Unreasonable.

Sentences must be both procedural sound and substantively reasonable. United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir.2010). A sentence is procedurally sound if the district court did not commit procedural error. United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir.), cert. denied, 562 U.S. 1035 (2010). Examples of procedural errors include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the

13

chosen sentence-including an explanation for any deviation from the Guidelines range." <u>Gall v. United States</u>, 552 U.S. 38, 51, 128 S.Ct. 586, __ L.Ed.2d __ (2007).

A reviewing court must first determine that the district court did not commit significant procedural error before considering the substantive reasonableness of the sentence. <u>Id</u>. When reviewing the substantive reasonableness of a sentence, this Court takes into account the totality of the circumstances, including the extent of any variance from the Guidelines. <u>Id</u>. "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible overall result." <u>United States v. Martin</u>, 520 F.3d 87, 96 (1st Cir. 2008).

This Court must also look to the sentencing objectives of 18 U.S.C. § 3553(a)(2), and whether the sentence is "sufficient but not greater than necessary" to comply with the goals listed in § 3553(a)(2):
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner.

The federal courts of appeals may set aside those sentences they find unreasonable. Rita v. United States, 551 U.S. 338, 354 (2007); United States v. Booker, 543 U.S. 220, 261 (2005). Whether a sentence is reasonable is a mixed question of law and fact. United States v. Cirilo-Munoz, 504 F.3d 106, 118 (1st Cir. 2007). Review of the overall reasonableness of a sentence is under an abuse of discretion standard whereas the factual findings of the district court are reviewed for clear error. Id.; United States v. Tavares, 705 F.3d 4, 24 (1st Cir.), cert. denied, __ U.S. __, 134 S.Ct. 450 (2013).

There is nothing in the record here to suggest that the district court committed procedural error in sentencing the defendant. Nor does the sentence appear to be substantively unreasonable, given the defendant's status as a leader in the drug conspiracy and his criminal history (Category IV).

In sentencing Mr. Rodriguez Cruz, Judge O'Toole noted the need for "just punishment for a serious offense," as well as the need to deter others from similar conduct. (D607 17). He thereafter stated:

15

And what's appropriate I think ties in to one of
the other statutory factors, which is the avoidance of
unwarranted disparities in sentencing. So I have in
mind the sentences that other participants received in
connection with this enterprise, including those who
are the more responsible and those who are the lesser
responsible. And that influences, I think, the
decision as to what the sentence should be.

In that respect, I note that the two other
significant leaders were Pinales, I guess -- I'm
accepting Mr. Gallagher's word for it -- I sentenced
as a secondary matter, not as a primary matter.

MR. GALLAGHER: That's correct, your Honor. Judge
Lindsey had the original sentence, and your Honor
adjusted it pursuant to a Rule 35 motion.

THE COURT: And the other was Rafael Heredia who I
did sentence originally, I believe. And those
sentences, in the end, were 168 and 180 months. So I
think those are influential in my decision here.

General, and I think in this case specific,
deterrence remain factors that need to be considered.

I'm not sure it's operationally significant, but
I note that because of the number that is produced by
using the drug quantities that are used in the report,
I just note that I think that's a conservative
estimate, the 160 kilos that was used.

The criminal history, I think, is a bit
problematic. I mean, my reading of it is that -- it
occurred a while ago. It's similar but -- well, we
don't know the details, I guess. It could well be
dissimilar, street level as opposed to operational.
And scoring it at sort of the high level that it does
I think may tend to overstate it. It would perhaps
overstate the offense -- the criminal offender --
career offender guideline as well. So I take that into
account perhaps a little bit in the other direction.

But if I were to assume that the offense level is
properly calculated but that the criminal history
might be suspect, and to look at Category I on the
criminal history, which is the lowest it could be at a
level 37, the Guidelines' recommendation would be 210
to 262, which is still pretty significant, obviously.

Taking all those things into account I decide, as
a matter of proportion, that sentencing to the other

participants, that a sentence at the level of 210 months is an appropriate one. (D607 18-19).

Having considered the appropriate statutory factors and finding a sentence of less than the statutory maximum to be appropriate, the trial judge did not abuse his discretion in sentencing Mr. Rodriguez Cruz. Moreover, undersigned counsel believes that arguing that his sentence was substantively unreasonable is not a meritorious claim on appeal where Mr. Rodriguez Cruz was sentenced to a term less than the maximum and less than the Guidelines called for despite the fact that he can fairly be described as a drug "kingpin.[6]" (See D607 10).

## Conclusion

For all of the foregoing reasons, counsel respectfully requests that this Court grant her motion to withdraw pursuant to Anders v. California, 386 U.S. 738.

Respectfully submitted,

ATTORNEY FOR
OSCAR RODRIGUEZ CRUZ,

/s/ Katherine C. Essington
Katherine C. Essington
190 Broad St., Suite 3W
Providence, RI 02903

---

[6] At the sentencing hearing, the prosecutor called Mr. Rodriguez Cruz a "kingpin" and defense counsel acknowledged: "[H]e may be the drug kingpin based upon the weight." (D697 13).

(401) 351-2889
katyessington@me.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.
R. App. P. 32(a)(7)(B) because this brief contains less
than words 14,000 words, excluding parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief
also complies with the typeface requirements of Fed. R.
App. P. 32(a)(6) because this brief has been prepared in a
proportionally spaced typeface in size 12 Courier New font.


/s/ Katherine C. Essington

## TABLE OF CONTENTS TO ADDENDUM

1. Judgment (minus Statement of Reasons) ................... Add 1-6

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# United States District Court
## District of Massachusetts

UNITED STATES OF AMERICA
### V.
### OSCAR RODRIGUEZ CRUZ

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **1: 04 CR 10314 - 12 - GAO**

USM Number: 94469-038

GEOFFREY G. NATHAN, ESQUIRE

Defendant's Attorney

☑ Additional documents attached

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

**THE DEFENDANT:**

☑ pleaded guilty to count(s)    1  ( Date of Plea: 6/17/14)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC Sec. 846 | Conspiracy to Distribute cocaine | 10/01/04 | 1 |
| 21 USC Sec. 841(b) | | | |
| (1)(C) | | | |
| 21 USC Sec. 841(a)(1) | | | |

The defendant is sentenced as provided in pages 2 through _____10_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/01/14

Date of Imposition of Judgment

Signature of Judge

The Honorable George A. O'Toole

Judge, U.S. District Court

Name and Title of Judge

12/9/14

Date

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **OSCAR RODRIGUEZ CRUZ** | Judgment — Page __2__ of __10__ |
| CASE NUMBER: **1: 04 CR 10314 - 12 - GAO** | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      **210**      month(s)

on Count 1.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

✎AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

| | | Judgment—Page 3 of 10 |
|---|---|---|

DEFENDANT:     **OSCAR RODRIGUEZ CRUZ**     ⊞
CASE NUMBER: **1: 04 CR 10314 - 12 - GAO**

## SUPERVISED RELEASE

☑ **See continuation page**

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     3     year(s)

on Count 1.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

4
✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

DEFENDANT:    **OSCAR RODRIGUEZ CRUZ**                Judgment—Page __4__ of __10__
CASE NUMBER:  **1: 04  CR  10314   - 12   - GAO**

## ADDITIONAL☑ SUPERVISED RELEASE☐PROBATION TERMS

The defendant is to participate in a program for substance abuse counseling as directed by the Probation Office, which program may include testing, not to exceed 104 drug tests per year to determine whether the defendant has reverted to the use of alcohol or drugs. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third-party payment.

The defendant is to participate in a mental health treatment program as directed by the Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third party payment.

If ordered deported, the defendant is to leave the United States and is not to return without prior permission of the Secretary of the Department of Homeland Security.

The defendant shall use his true name and is prohibited from the use of any false identifying information which includes, but is not limited to, any aliases, false dates of birth, false social security numbers, and incorrect places of birth.

## Continuation of Conditions of ☐ Supervised Release ☐ Probation

5

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

DEFENDANT: **OSCAR RODRIGUEZ CRUZ**

CASE NUMBER: **1: 04 CR 10314 - 12 - GAO**

Judgment — Page __5__ of __10__

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** $ | $100.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

☐ See Continuation Page

| **TOTALS** | $ | $0.00 | $ | $0.00 |
|---|---|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

6
⬥AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

DEFENDANT:    **OSCAR RODRIGUEZ CRUZ**

CASE NUMBER: **1: 04 CR 10314  - 12  - GAO**

Judgment — Page ___6___ of ___10___

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

    The assessment fee is due forthwith.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation
   Page

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:

    See Order of Forfeiture

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.